UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JACQUELINE ELIZABETH ARD and TERRY FRANK NICOLA, Appellants, <br><br> v. <br><br> KEVIN CAMPBELL, Chapter 7 Trustee, et al., Appellees. | ADV PROC: 9:25-cv-04500-BHH-MHC <br> BK CASE NO.:25-01384-JD <br> CHAPTER 7 <br><br> EMERGENCY MOTION FOR STAY PENDING APPEAL, INJUNCTIVE RELIEF, AND ORDER COMPELLING ADVANCEMENT OF APPEAL *(Fed. R. Bankr. P. 8007(b); 28 U.S.C. §§ 1651, 158; 11 U.S.C. §§ 105(a), 363)* |

**EMERGENCY MOTION FOR STAY PENDING APPEAL, INJUNCTIVE RELIEF, AND ORDER COMPELLING ADVANCEMENT OF APPEAL**
*(Fed. R. Bankr. P. 8007(b); 28 U.S.C. §§ 1651, 158; 11 U.S.C. §§ 105(a), 363)*

Debtors–Appellants Jacqueline Elizabeth Ard and Terry Frank Nicola ("Appellants"), proceeding pro se, respectfully move this Court for an emergency stay pending appeal and related injunctive relief preserving the status quo.

Appellants submit that immediate intervention is necessary to prevent irreversible medical, property, and appellate harm before the pending appeals can be meaningfully heard.

## PRELIMINARY STATEMENT

This case has reached a critical inflection point.

The Bankruptcy Court has authorized an accelerated liquidation path that requires Appellants—two permanently disabled debtors—to vacate their homes within days while permitting turnover and disposal of personal property and distribution of proceeds to disputed creditors. At the same time, Appellants' appeals remain pending and incomplete due in part to transcript delays outside their control.

The practical effect is stark: absent intervention, estate assets may be irreversibly sold and Appellants displaced before the District Court can review the serious legal questions presented.

Rule 8007 is designed to prevent situations in which appellate review would be rendered meaningless by the absence of a stay, as recognized in *Nken v. Holder,* 556 U.S. 418, 427 (2009), where the Court explained that a stay serves to preserve effective appellate review.

Appellants therefore respectfully request emergency relief.

## RELIEF REQUESTED

Appellants request an order:

**A.** Staying and enjoining all actions to market, auction, sell, transfer, close, or otherwise dispose of estate property pending appeal;

**B.** Immediately preserving the status quo through an administrative stay;

**C.** Compelling advancement of the appeal, including transcript production and expedited briefing;

**D.** Waiving, reducing, or allowing alternative security in lieu of a full supersedeas bond; and

**E.** Granting such further relief as is just and proper.

## JURISDICTION AND AUTHORITY

This Court has jurisdiction under 28 U.S.C. § 158(a). Relief is properly sought under Fed. R. Bankr. P. 8007(b), as the Bankruptcy Court denied Appellants' Emergency Motion to Impose the Automatic Stay, denied a stay pending appeal, denied reasonable accommodations and recusal, and ordered conversion to Chapter 7—all while related appeals arising from the same course of conduct remain pending. These unresolved appeals, if not stayed, risk statutory mootness under 11 U.S.C. § 363(m) and irreparable harm.

This Court also holds authority under 28 U.S.C. § 1651 (All Writs Act) to issue orders necessary to protect its jurisdiction, and 11 U.S.C. § 105(a) to prevent abuse of process or actions that would undermine appellate review.

The stay standard requires consideration of: (1) likelihood of success on the merits or serious legal questions going to the merits; (2) irreparable harm absent a stay; (3) balance of the equities; and (4) public interest. See *Nken v. Holder,* 556 U.S. 418, 425, 434 (2009).

## I. NATURE OF THE EMERGENCY

This emergency did not arise overnight. It developed through a sequence of rulings that, in combination, have stripped Appellants of the ordinary protections that typically preserve the status quo during appellate review.

The Sale Order now requires immediate turnover and threatens eviction and disposal of personal property. At the same time, the Trustee seeks to invoke § 363(m) protections that could moot the appeals once a sale closes.

Courts have repeatedly held that the risk of statutory mootness under 11 U.S.C. § 363(m) constitutes a form of irreparable harm warranting a stay pending appeal. See *In re Stadium Mgmt. Corp.*, 895 F.2d 845, 847 (1st Cir. 1990); *In re Rare Earth Minerals,* 445 F.3d 359, 363 (4th Cir. 2006) (noting the powerful mootness effect of § 363(m)). Without immediate relief, the appeals risk becoming illusory.

## II. CHRONOLOGY OF DILIGENCE, APPELLATE STAGNATION, AND PROCEDURAL OBSTRUCTION

Appellants submit the following chronology to demonstrate their diligence and to show that appellate stagnation results from missing transcripts and administrative inaction—not from Appellants:

- **April 18, 2025:** Appellants filed Motion to Impose Automatic Stay under 11 U.S.C. § 362(c)(4)(B).
- **April 25, 2025:** Appellants filed sworn affidavit in support.
- **May 20, 2025:** Appellants filed Response to all objections.
- **May 21, 2025:** Bankruptcy Court denied Motion to Impose.
- **May 22, 2025:** Appellants timely filed Notice of Appeal and Statement of Election to district court.
- **May 31, 2025:** Appellants paid $298 appellate filing fee.
- **June 10, 2025:** While appellate relief was pending, West-Aircomm repossessed Appellants' vehicle en route to medically necessary treatment.

- **June 12, 2025:** Judge Davis granted West-Aircomm's Relief from Stay Motion (post repossession).
- **June 17, 2025:** Appellants filed Amended Notice of Appeal to cure alleged deficiencies.
- **June 18, 2025:** Appellants filed Motion for ADA Accommodations with medical documentation.
- **June 23, 2025:** Judge Davis denied ADA Motion.
- **July 18, 2025:** Appellants filed Motion for Extension of Time re: appellate documents (docketed inconsistently, but Appellants possess email confirmation of receipt).
- **September 10, 2025:** Appellants filed transcript request for Motion to Impose hearing. Request processed, but despite repeated follow up emails, no transcript has been produced and no explanation provided.
- **September 15, 2025:** Appellants filed (i) Emergency Motion for Stay Pending Appeal (with affidavits/medical evidence) and (ii) Designation of Record and Statement of Issues.
- **September 24, 2025:** Judge Davis denied Stay Pending Appeal Motion.

To date: No transcripts have been produced, no briefing schedule issued, and appeals remain stagnant despite Appellants' completed filings. Meanwhile, the Trustee now seeks § 363 liquidation sales, which would trigger statutory mootness under § 363(m) and effectively nullify appellate jurisdiction.

## III. NO STAY EXISTS ONLY BECAUSE IT WAS WRONGFULLY DENIED

Each request for stay protection was denied despite Appellants' sworn evidence of disability, medical necessity, and irreparable harm. Equity does not permit the Trustee or creditors to exploit the Bankruptcy Court's wrongful denial of stay protection—and an appellate process stalled through no fault of Appellants—to liquidate estate assets and extinguish appellate rights.

Appellants complied fully with Bankruptcy Code requirements by:

- Seeking imposition of the automatic stay under 11 U.S.C. § 362(c)(4)(B);
- Seeking a stay pending appeal under Fed. R. Bankr. P. 8007; and
- Seeking emergency relief as enforcement actions escalated.

4

Appellants timely appealed:

- Denial of the automatic stay;
- Denial of recusal of Judge Davis; and
- Forced conversion to Chapter 7.

Appellants thereafter fulfilled every appellate obligation, including:

- Filing designations of record and statements of issues;
- Requesting hearing transcripts necessary for record completion; and
- Filing emergency motions to preserve appellate rights.

Each appeal bears a docket number and case number, yet none has progressed. Appellants have received:

- No acknowledgment from the District Court;
- No briefing schedule; and
- No deficiency notices or instructions.

The absence of a stay results not from delay, neglect, or bad faith, but solely from adverse rulings now on appeal. Equity forbids Appellees from exploiting this procedural gap—created by denial of stay protection and appellate stagnation—to irreversibly seize and liquidate estate property.

Courts evaluating stay requests apply the traditional four-factor standard and exercise equitable judgment based on the circumstances of the particular case. See *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)."Equity does not permit parties to exploit the absence of a stay—where that absence itself is under appellate challenge—to rush liquidation and extinguish appellate rights.

## IV. MOTION TO IMPOSE AUTOMATIC STAY SHOULD BE GRANTED BASED ON CLEAR EVIDENCE OF GOOD FAITH

Under 11 U.S.C. § 362(c)(4)(B), the court shall grant a motion to impose the automatic stay if the debtor demonstrates by clear and convincing evidence both (1) good faith in the current filing and (2) changed circumstances since prior dismissals. The record here satisfies both prongs.

**Clear evidence of good faith** includes:

- Timely filing of all schedules and plan documents in this Chapter 13 case;
- Full and timely payment of every Chapter 13 plan installment prior to forced conversion;

- Demonstrated stable income ($7,000/month retirement + $6,000–$8,000/month rentals);
- Compliance with court orders, including traveling 843 miles to appear despite disability; and
- Prior dismissals caused by documented illness, disability, and procedural barriers—not abuse of process.

See, e.g., *In re Kestell,* 99 F.3d 146, 149 (4th Cir. 1996) (debtor compliance with plan payments/court orders evidences good faith); *In re Thomas,* 679 F.3d 162, 173–74 (4th Cir. 2012) (good faith shown through diligent efforts despite challenges); *In re Lee,* 438 B.R. 910, 917 (Bankr. D.S.C. 2010) (clear and convincing evidence standard met where debtor showed stable income, timely payments, and medical barriers to prior compliance).

Changed circumstances are equally clear: Appellants' medical crises have stabilized sufficiently to enable sustained Chapter 13 compliance, distinguishing this case from prior dismissals. See *In re McElhinney,* 463 B.R. 357, 366 (Bankr. W.D.N.C. 2011) (changed circumstances shown by medical improvement enabling reorganization).

This compelling record mandates imposition of the automatic stay under § 362(c)(4)(B).

## V. PRE-HEARING INSTABILITY AND FORCED DISPLACEMENT

In the months leading up to the May 22, 2025, hearing, Appellants' living conditions in South Carolina deteriorated dramatically. They endured disconnection of electrical service during the bankruptcy, towing of their vehicle, deactivation of parking passes, and repeated interference with access to their residence.

These events created a hostile and medically unstable environment for Mr. Nicola, who suffers from advanced Stage IV Parkinson's disease and requires reliable electric power and a stable living environment to mitigate his symptoms.

On April 8, 2025, following the unlawful disconnection of power, Ms. Ard suffered a catastrophic injury to her dominant hand, necessitating reconstructive surgery to reattach a severed finger and repair two tendons and an artery, resulting in permanent paralysis. Confronted

with simultaneous medical crisis and housing instability, Appellants temporarily relocated to Michigan to recover and regain stability. Despite this 843-mile displacement, they remained committed to appearing in person at the May 22 hearing.

## VI. THE DAY OF THE HEARING — DETAILED TIMELINE

The events of May 22 demonstrate diligence, not neglect. Despite documented medical limitations and travel complications, Appellants traveled over 18 hours (843 miles) from Michigan to South Carolina to attend in person.

Due to inclement weather and disability complications during the drive, they experience a delay in their arrival. At 9:03 a.m., they contacted the court deputy of their anticipated 11:37 a.m. arrival for the 11:00 a.m. hearing; the deputy confirmed the matter would be held. At approximately 11:15 a.m., the deputy contacted Appellants again, who reaffirmed their imminent arrival.

Appellants reached the courthouse at 11:37 a.m., ready to proceed. All creditors and counsel were present. Judge Davis returned to the bench. Rather than conducting the hearing, however, Judge Davis announced he was recalling the matter solely to read the order. He then denied the Motion with prejudice for failure to appear and prosecute—without hearing argument or ruling on the merits. Judge Davis further announced a future hearing on conversion to Chapter 7 or dismissal with a three-year bar to refiling, then adjourned.

Despite, the advanced notice of a brief 37-minute delay, the presence of all parties in the courtroom, and the Appellants' appearance ready to proceed, The Court exercised its discretion to deny the motion **with prejudice**—before Appellants' pre-confirmed arrival time—thereby depriving them of their fundamental right to prosecute the motion and be heard on the merits.

## VII. PATTERN OF DISPROPORTIONATE SANCTIONS

The Fourth Circuit has cautioned that dismissal-type outcomes require careful, proportionate use of sanctions and consideration of specific factors, including the party's personal responsibility, prejudice to the opposing side, any history of delay, and the availability of less drastic

7

alternatives. See *Hillig v. Comm'r,* 916 F.2d 171, 174 (4th Cir. 1990); *In re Walters,* 868 F.2d 665, 669 (4th Cir. 1989).

Applied here, a series of rigid procedural rulings has effectively stripped stay protections, accelerated liquidation, curtailed meaningful opportunities to cure, and threatened future filing rights. For medically vulnerable pro se debtors, this cumulative effect imposes extraordinary hardship—precisely the kind of inequitable outcome that the stay mechanism in Rule 8007 is intended to avert.

## VIII. § 363 SALES WILL MOOT THE APPEAL; § 363(m) PROTECTION IS NOT ABSOLUTE

Absent a stay, consummated § 363 sales to good-faith purchasers will render these appeals statutorily moot under 11 U.S.C. § 363(m), stripping this Court of jurisdiction. See *In re Rare Earth Minerals, LLC,* 445 F.3d 359, 363 (4th Cir. 2006).

Moreover, § 363(m) does not categorically immunize sales conducted amidst allegations of fraud, collusion, or bad faith. See, *e.g., In re Edwards,* 962 F.2d 641, 643-44 (7th Cir. 1992) (collecting cases); see also *3 Collier on Bankruptcy* ¶ *363.11 (Richard Levin & Henry J. Sommer eds., 16th ed.).*

Appellants have raised—and actively pursue—claims that certain creditors engaged in fraudulent conduct against the estate. Permitting sales to close before appellate review would reward such alleged misconduct and permanently foreclose accountability.

## IX. DISPUTED HOA CLAIMS AND SALE PROCEEDS RISK

The Sale Order anticipates distributions to homeowners' associations whose asserted liens, in Appellants' good-faith knowledge, consist of punitive fines, attorneys' fees, and late charges not unpaid regular assessments. Those lien components are currently being actively litigated in state court. Proceeding with liquidation and distribution before that adjudication, risks misallocating estate value and causing irreparable prejudice to Appellants.

## X. IRREPARABLE HARM (MEDICAL, HOUSING, AND CONSTITUTIONAL)

Appellants face compounded, irreversible harm. Mr. Nicola (68) suffers advanced Stage IV Parkinson's requiring stable power, transportation, and housing; Ms. Ard endures permanent dominant-hand paralysis post-reconstructive surgery. Vehicles essential for medical transport have already been seized; rental properties generating $6,000–$8,000/month income face imminent § 363 liquidation.

Fourth Circuit precedent confirms this constitutes irreparable harm:

- *Loss of housing/medical stability*: *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 425 (4th Cir. 2007) (irreparable harm where eviction threatens "basic human need for shelter").
- *Threat to life/health*: *Winter v. NRDC*, 555 U.S. 7, 20 (2008) (physical harm incapable of monetary remedy); *see also Roe v. Dep't of Defense*, 947 F.3d 207, 231 (4th Cir. 2020) (medical destabilization warrants stay).
- *Constitutional deprivation*: *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 817 (4th Cir. 1991) (due process violations constitute irreparable harm); *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010) (adopted in 4th Cir.) (right to be heard triggers presumption of irreparable injury).

Displacement would exacerbate Parkinson's symptoms (falls, psychosis, cognitive decline already documented) and destroy income stability. No monetary remedy exists for medical catastrophe or extinguished appellate rights.

## XI. IRREPARABLE HARM IS OVERWHELMING

Under Nken, the irreparable-harm inquiry is a critical component of the stay analysis, and courts give particular weight to the first two factors—likelihood of success and irreparable injury. See *Nken v. Holder*, 556 U.S. 418, 434 (2009). Appellants face concrete and escalating medical harm: Mr. Nicola's Parkinson's disease has measurably worsened under litigation-related stress, including frequent falls, battery-related functional interruptions, night terrors, cognitive decline, and episodes of psychosis. Forced displacement from the residence would further destabilize his condition.

Courts have also recognized that the loss of real property pending appeal can constitute irreparable harm supporting a stay. See, *e.g., In re Frank,* 2010 WL 1416692, at *3 (Bankr. E.D. Va. Apr. 6, 2010). In addition, once a sale closes to a good-faith purchaser under 11 U.S.C. § 363, appellate relief is often foreclosed by the statutory mootness rule. See *In re Rare Earth Minerals,* 445 F.3d 359, 363 (4th Cir. 2006) (describing the "powerful mootness effect" of § 363(m)). The combined risk of serious medical destabilization, loss of the home, and statutory mootness presents the paradigmatic case for finding irreparable harm.

## XII. ABSENCE OF STAY AND LITIGATION FRACTURE ACROSS JURISDICTIONS

**The absence of a stay—resulting solely from its wrongful denial—has fractured proceedings across multiple courts and jurisdictions.** As a direct result, these disabled, pro se Appellants, who no longer possess their vehicles, are compelled to defend more than six active cases simultaneously in the Bankruptcy Court, the United States District Court, the Beaufort County Court of Common Pleas, and the South Carolina Court of Appeals.

This is not a product of litigation strategy or delay, but of necessity. Without a stay, creditors have been effectively granted an open gate to pursue estate property through parallel proceedings, without centralized oversight, while appellate review remains pending. The resulting litigation burden is overwhelming, physically dangerous to these disabled Appellants, and irreparable in effect.

Permitting a § 363 sale under these circumstances would do more than moot the pending appeals—it would affirmatively reward creditors alleged to have engaged in fraudulent conduct by allowing them to obtain estate property without accountability or review. Equity does not permit appellate rights to be extinguished through procedural acceleration, nor does the public interest favor rewarding alleged fraud through irreversible liquidation while appeals are pending.

## XIII. LIKELIHOOD OF SUCCESS OR SERIOUS QUESTIONS

Appellants are not required to demonstrate certain victory on the merits, only that their appeals present serious questions deserving appellate review. See *The Real Truth About Obama, Inc. v. FEC,* 575 F.3d 342 (4th Cir. 2009).

The notices of appeal raise substantial issues, including: the failure to adequately account for Appellants' disability and pro se status, the premature extension of § 363(m) protections, insufficient analysis of exemptions under 11 U.S.C. § 522(l), overbroad turnover authority, and the waiver of Rule 6004(h) without particularized findings. At a minimum, these matters present serious appellate questions.

## XIV. BALANCE OF EQUITIES

The balance of equities overwhelmingly favors Appellants. They face the loss of health, stable housing, and the practical ability to obtain appellate review, while Appellees face only a temporary delay in distribution or enforcement. See *Nken v. Holder*, 556 U.S. 418, 435 (2009) (emphasizing that courts must weigh the relative harms in deciding whether to grant a stay).

The public interest likewise supports interim relief. It favors preserving meaningful appellate review, protecting access to the courts for disabled litigants, preventing appeals from becoming moot through procedural acceleration, and maintaining confidence in the integrity and orderly administration of the bankruptcy system. See *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (recognizing the public interest in both error correction and the proper administration of justice).

## XV. PUBLIC INTEREST

The public interest favors preserving meaningful appellate review, safeguarding equal access to the courts for individuals with disabilities, maintaining orderly bankruptcy administration, and minimizing the risk of irreversible error—particularly where statutory mootness under 11 U.S.C. § 363(m) could otherwise bar effective review.

## XVI. BOND WAIVER OR ALTERNATIVE SECURITY

Courts have discretion to waive or reduce a supersedeas bond in appropriate circumstances under the stay-pending-appeal framework. See *Fed. R. Civ. P. 62; Fed. R. Bankr. P. 8007*. Here, waiver or substantial reduction is warranted.

First, a full bond is financially impossible: Appellants are disabled and have severely limited liquidity. Second, the estate faces no meaningful prejudice because the properties are insured and

being preserved. Third, alternative forms of protection are available; the Court may, for example, require escrow arrangements, preservation orders, or a partial bond tailored to the actual risk. In these circumstances, requiring a full bond would operate in practice as a denial of appellate review.

## XVII. REQUEST FOR EXPEDITED RELIEF

Because the Trustee's sale process is moving swiftly and the risk of § 363(m) mootness is imminent, Appellants respectfully request: (i) an immediate administrative stay, (ii) an expedited hearing, and (iii) date-certain advancement of the appeal.

## CONCLUSION

This case is no longer about ordinary bankruptcy administration. It is about whether two permanently disabled debtors will lose their homes, medical stability, and appellate rights before a reviewing court can examine the serious legal issues presented.

Rule 8007 exists to prevent precisely this outcome.

**WHEREFORE,** Appellants respectfully request entry of an order granting the requested emergency relief.

Date: 2-25-26

**Respectfully submitted,**

_____
Jacqueline E. Ard, Appellant *Pro Se*
21215 Dartmouth Dr
Southfield, MI 48076
(313) 770-7051

_____
Terry F. Nicola, Appellant *Pro Se*
21215 Dartmouth Dr
Southfield, MI 48076
jacquelineard72@gmail.com